Filed 6/23/26  P. v. Flores CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RAUL GASTELLUM FLORES,<br><br>    Defendant and Appellant. | G064516<br><br>(Super. Ct. No. 17CF2673)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Sheila F. Hanson, Judge. Affirmed.

Alan Siraco, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Robin Urbanski, Stephanie H. Chow, and Flavio Nominati, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Raul Gastellum Flores stands convicted of four counts of special circumstances murder. He contends reversal is required because the trial court's jury instructions allowed him to be convicted of murder on an invalid theory of imputed malice. We disagree and affirm the judgment.

STATEMENT OF FACTS

Rosario Lopez and brothers Edgar and Joel Berrelleza operated a large-scale heroin ring that had ties to a Mexican drug cartel. In 2015, Lopez and Edgar had a falling out, and Lopez ended up hiring Flores to kill Edgar and Joel so Lopez could take over the business for himself. Lopez also directed Flores to get the Berrelleza brothers' phones because they contained contact information about their drug clientele.

Edgar was killed first. On the afternoon of November 9, 2015, he was ambushed by Flores and two other men while he was sitting in his SUV in Orange with Antonio Medina and Fernando Meza. During the confrontation, Edgar was fatally shot five times, Medina was fatally shot twice, and Meza was shot and stabbed multiple times. Meza was still alive in the back seat until Flores doused the vehicle with gasoline and set it on fire to eliminate forensic evidence.

Six days later, the police found Joel's bullet-ridden body in his car on a street in Fontana. Based on the decomposed condition of his body, the authorities determined he had been dead for about a week.

Flores was arrested three years later in Oklahoma. When interviewed by investigators, he admitted he was involved in Edgar's deadly ambush and that he set Edgar's SUV on fire. He also admitted he was involved in Joel's murder, saying he was part of a group of men who abducted Joel from his apartment, stole his belongings, and took him to Fontana,

2

where he was killed. However, Flores denied shooting Joel or any of the other victims.

At trial, defense counsel argued Flores was not guilty because he acted under duress from Lopez. But the jury convicted him of four counts of first degree murder with multiple-murder and felony-murder special circumstances. (Pen. Code, §§ 187, subd. (a), 190.2, subds. (a)(3), (a)(17).)[1] As to each count, the trial court sentenced Flores to life in prison without parole.

## DISCUSSION

Flores argues the trial court's instructions were prejudicially flawed because they permitted the jury to convict him of murder based on an invalid theory of imputed liability. We disagree.

## I.

### STATUTORY FRAMEWORK

Flores's argument is grounded in Senate Bill No. 1437, a landmark measure that redefined the parameters for the crime of murder in California. (Stats. 2018, ch. 1015 (Senate Bill 1437).) Senate Bill 1437 was designed "to ensure that murder culpability is commensurate with a person's actions." (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) To that end, the bill eliminated natural and probable consequences liability for murder by providing that malice may not be imputed to a person based solely on his participation in a crime. (§ 188, subd. (a)(3).)

As relevant here, Senate Bill 1437 also reined in the felony-murder rule by amending section 189, subdivision (e) to provide, "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [including robbery] in which a death occurs is liable for

---

[1] All further statutory references are to the Penal Code.

3

murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [s]ection 190.2." (§ 189, subds. (e)(1)–(3).)

## II.

### JURY INSTRUCTIONS

The trial court instructed the jury on two theories of first degree murder—premeditation and felony murder. Flores's appeal is limited to the latter theory.

Pursuant to CALCRIM No. 540A, the trial court instructed the jury that Flores was guilty of first degree felony murder if, while committing or attempting to commit robbery, he personally committed the act or acts that directly caused the death of another person.

The trial court also gave CALCRIM No. 540B, which explained first degree felony murder if someone other than Flores was the actual killer. Pursuant to that instruction, the jury was told:

"The defendant may also be guilty of murder, under a theory of felony murder, even if another person did the act that resulted in the death. I will call the other person the *perpetrator*.

"To prove that the defendant is guilty of first degree murder under this theory, the People must prove that:

"1. The defendant committed or attempted to commit, or aided and abetted, or was a member of a conspiracy to commit [r]obbery;

4

"2. The defendant intended to commit, intended to aid and abet the perpetrator in committing, or intended that one or more members of the conspiracy commit [r]obbery;

"3. If the defendant did not personally commit or attempt to commit [r]obbery, then a perpetrator, whom the defendant was aiding and abetting or with whom the defendant conspired, committed or attempted to commit [r]obbery;

"4. While committing or attempting to commit [r]obbery; the perpetrator caused the death of another person;

"5. The defendant was a major participant in the [r]obbery;

"AND

"6. When the defendant participated in the [r]obbery, he acted with reckless indifference to human life." (CALCRIM No. 540B.)

As part of this instruction, the trial court provided the jury a list of factors it may consider in determining whether Flores was a major participant in the robbery and acted with reckless indifference to human life. Those factors included Flores's role in planning the robbery, whether he supplied weapons used in the robbery, and whether he was aware of anything that would make the perpetrator likely to kill. We refer to these factors as the *Banks/Clark* factors, based on the California Supreme Court cases from which they were derived. (See *People v Banks* (2015) 61 Cal.4th 788 [examining the major participant requirement]; *People v. Clark* (2016) 63 Cal.4th 522 [examining the reckless indifference requirement]; see also *Tison v. Arizona* (1987) 481 U.S. 137 [discussing the constitutional parameters of the felony-murder rule].)

As to whether Flores was a member of a conspiracy to commit robbery for purposes of CALCRIM No. 540B, the trial court instructed the

5

jury to refer to its separate instruction on conspiracy, CALCRIM No. 416. Entitled "Evidence of Uncharged Conspiracy," that instruction explained: "The People have presented evidence of a conspiracy. A member of a conspiracy is criminally responsible for the acts or statements of any other member of the conspiracy done to help accomplish the goal of the conspiracy. [¶] To prove that the defendant was a member of a conspiracy in this case, the People must prove that:

"1. The defendant intended to agree and did agree with one or more of [the other alleged members of the conspiracy] to commit [r]obbery;

"2. At the time of the agreement, the defendant and one or more of the other alleged members of the conspiracy intended that one or more of them would commit [r]obbery;

"3. The defendant, or one of or all of the coconspirators committed at least one of the following overt acts to accomplish [r]obbery: [g]oing to Edgar's [SUV], [g]oing to [Joel's apartment], and [m]aking contact with Joel and Edgar Berrelleza;

"AND

"At least one of these overt acts was committed in California." (CALCRIM No. 416.)

## III.

### ANALYSIS

Flores contends that, when read together, CALCRIM No. 540B and CALCRIM No. 416 permitted the jury to convict him of first degree felony murder on the basis he conspired to commit robbery and a member of his conspiracy committed first degree murder during the robbery. Flores argues this was improper because it allowed the jury to impute the perpetrator's liability to him regardless of whether he personally harbored a

6

mental state required for felony murder under section 189, subdivision (e), as amended by Senate Bill 1437.

In defending the trial court's instructions, the Attorney General relies on the fact the court did not give CALCRIM No. 417, which fully explains the natural and probable consequences theory in conspiracy cases.[2] Absent that instruction, the Attorney General contends it is not reasonably likely the jury relied on a theory of imputed liability to convict Flores of first degree murder based solely on his membership in the robbery conspiracy.

As set forth above, however, the first paragraph of CALCRIM No. 416 informed the jury a member of a conspiracy is "criminally responsible for the acts or statements of any other member of the conspiracy done to help accomplish the goal of the conspiracy." This language "is analogous to the natural and probable consequences doctrine, as it allows the jury to impute malice to a defendant based only on his participation in the uncharged conspiracy's target offense." (*People v. Virgen* (2025) 110 Cal.App.5th 440, 453.) Therefore, it should not have been given in conjunction with CALCRIM No. 540B.

Nevertheless, Flores could not have been prejudiced by this instructional error, given the way CALCRIM No. 540B was worded. That is because CALCRIM No. 540B precluded the jury from convicting Flores of

---

[2] CALCRIM No. 417 states a member of a conspiracy is criminally responsible not only for the crimes they conspire to commit but also for "any act of any member of the conspiracy if that act is done to further the conspiracy and that act is a natural and probable consequence of the common plan or design of the conspiracy. This rule applies even if the act was not intended as part of the original plan. . . . [¶] A *natural and probable consequence* is one that a reasonable person would know is likely to happen if nothing unusual intervenes." (CALCRIM No. 417.)

7

first degree felony murder unless he was a major participant in the robbery and acted with reckless indifference to human life. The inclusion of these elements ensured Flores was not convicted on an invalid theory of imputed malice due to the conspiracy language in CALCRIM Nos. 540B and 416.

Flores disagrees. Although he acknowledges the major participant and reckless indifference elements in CALCRIM No. 540B comport with the language of section 189, subdivision (e)(3), Flores notes subdivision (e) applies only to a "*participant* in the perpetration or attempted perpetration" of the subject felony. (§ 189, subd. (e), italics added.) Focusing on this threshold requirement, Flores contends the jury could have premised his felony murder liability on his participation in a conspiracy to commit robbery without finding he was a "participant" in the robbery for purposes of section 189, subdivision (e).

Flores contends this was possible because some of the *Banks/Clark* factors included in CALCRIM No. 540B refer to conduct that is preparatory in nature—such as planning and supplying weapons to others— that could have taken place before the targeted robbery/murders actually began. However, it is undisputed Flores's conduct went well beyond the planning or preparatory stage in this case. By Flores's own admission, he was actively involved in the commission of all four of the robbery/murders with which he was charged. He admitted he was involved in the deadly ambush and killing of Edgar and that he then doused Edgar's SUV with gasoline (with Meza still alive inside) and set it on fire. Flores also admitted he was one of the group of men who abducted Joel, stole his belongings, and transported him to Fontana, where he was killed.

Moreover, to convict Flores of felony murder under CALCRIM No. 540B, the jury had to find he was a "major participant" in the underlying

8

robberies. Given this requirement, the jury could not have convicted Flores of felony murder without necessarily finding he was a "participant" in the robberies.

As part of his argument, Flores also points out the legislative history of Senate Bill 1437 indicates it was intended to abrogate liability for felony murder based on the defendant's status as a coconspirator. But this is hardly surprising because, by their terms, all three theories of felony murder set forth in section 189, subdivision (e) require something more than mere participation in a conspiracy that leads to murder.

In this case, CALCRIM No. 540B instructed the jury on the theory contained in section 189, subdivision (e)(3). The first three elements of the instruction required the jury to find Flores committed, aided and abetted, or conspired to commit robbery or attempted robbery. The fourth element required the jury to find the perpetrator killed the victim in the course of the robbery or attempted robbery. And the fifth and sixth elements required the jury to find Flores was a major participant in the robbery and acted with reckless indifference to human life. (CALCRIM No. 540B.)

Importantly, CALCRIM No. 540B required the jury to find *all six elements* to convict. Irrespective of whether the jury believed Flores was connected to the robberies as a perpetrator, aider and abettor, or a conspirator, the last two elements of the instruction guaranteed Flores's liability was based on his *own* actions and his *own* mental state. And, as explained above, they also ensured Flores was a *participant* in the underlying robberies. That being the case, we reject Flores's argument that CALCRIM No. 540B permitted the jury to convict him of an invalid theory of first degree felony murder. Regardless of how the trial court defined the scope of a

9

conspirator's liability in CALCRIM No. 416, it could not have prejudiced Flores in light of how CALCRIM No. 540B was worded.

In addition to challenging CALCRIM No. 416 on the basis it defined the scope of a conspirator's liability too broadly, Flores submits the instruction was legally incorrect because "it did not convey that the joint intent to rob must have been shared by appellant and the *same* alleged coconspirator(s) with whom the jury found appellant entered into the agreement." Stated differently, Flores contends the instruction was flawed because it allowed the jury to find he was a conspirator if he agreed to commit robbery with one alleged coconspirator, but he shared the intent to rob with a different alleged coconspirator.

As set forth above, however, CALCRIM No. 416 stated the jury could not find Flores to be a member of a conspiracy unless he "intended to agree and did agree with one or more of [the other alleged members of the conspiracy] to commit [r]obbery." Because a person cannot agree to commit robbery without also intending to commit that offense, this ensured Flores shared both the intent to agree and the intent to commit robbery with the same person. We therefore reject his claim to the contrary.

## DISPOSITION

The judgment is affirmed.

GOODING, J.

WE CONCUR:

MOORE, ACTING P. J.

SERVINO, J.